UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ERSIN YAMAN,
                      Plaintiff,

    -vs-

LOUIS S. D'ANGELO individually and in his capacity       DECISION AND ORDER
as an employee of the City of Rochester,                      No. 01-CV-6543 (CJS)
DAN R. MAGIL individually and in his capacity
as an employee of the City of Rochester,
THOMAS RUTHERFORD individually and in his
capacity as an employee of the City of Rochester,
OFFICER NOBLE individually and in his capacity
as an employee of the City of Rochester, and
THE CITY OF ROCHESTER,
                      Defendants.

_____

APPEARANCES

For Plaintiff:            Nira T. Kermisch, Esq.
                          36 West Main Street, Suite 405
                          Rochester, New York 14614

For Defendant:         Matthew D. Brown, Esq.
                          City of Rochester Law Department
                          City Hall, Room 400-A
                          30 Church Street
                          Rochester, New York 14614-1295

INTRODUCTION

     This is an action pursuant to 42 U.S.C. § 1983, in which plaintiff claims that the individual defendant police officers, acting pursuant to policies of the City of Rochester, violated his constitutional rights by denying him a license to operate his second-hand jewelry business, without due process, and by subsequently forcing him, through a campaign of harassment, to close his jewelry business. Plaintiff further claims that the

1

Rochester City Code provision, under which he was denied a "Secondhand Dealer"'s license, is unconstitutionally vague and over-broad. Now before the Court is defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56. For the reasons that follow, the motion is granted and this action is dismissed.

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case. At all relevant times, plaintiff operated a business on Lyell Avenue in the City of Rochester called the "Ace of Diamonds". The Ace of Diamonds' business was primarily, if not exclusively, to buy second-hand jewelry, or, as the plaintiff described it, "scrap metal." Plaintiff would pay cash for the "scrap metal" jewelry, and then sell it to a refinery, where it would be melted down. Plaintiff and his business associate, Ray Simonetti ("Simonetti"), disagree as to whether or not the Ace of Diamonds sold any jewelry. Simonetti testified at his deposition that the Ace of Diamond's only purchased second-hand jewelry.[1] *See*, Simonetti Dep. 111 ("If it did anything, it was buying jewelry."); 113 ("We weren't a retail business. We didn't retail anything."). Plaintiff, on the other hand, maintains that he also sold some jewelry to people who would ask him to find them a particular item. However, it is undisputed that the only display cases in the Ace of Diamonds shop were empty. According to plaintiff, he kept his "inventory" of jewelry for sale in a briefcase in a safe in the back of the building. *See*, Yaman Dep. 20-21.

The City of Rochester Municipal Code in effect at the time required any person

---

[1] Simonetti testified that he was personally present at the Ace of Diamonds during all business hours, and that he lived in an apartment in the rear of the building. Simonetti stated that the door was not open to the public, but rather, someone wanting to do business had to ring a bell to see admittance. Simonetti Dep. 106, 110

2

dealing in second-hand jewelry, gold, or silver, to obtain a license, which had to be renewed each year. (Rochester Municipal Code, § 96-3). In that regard, the Code provided that

> the Chief of Police shall cause an inspection to be made of the applicant's business premises to determine whether public safety problems exist, and the Chief of Police shall cause an investigation to be made of the background of the owner and operator of the business. Before the issuance of a license, the Chief of Police and his representatives shall have the right to enter upon such premises during normal business hours for the purpose of making inspections .... The owner, operator and employees of any secondhand business shall be of good moral character .... The Chief of Police may promulgate rules and regulations to govern the operation of secondhand businesses ....

(*Id.*, § 96-2(B)-(D)). The Code further provides that the Chief of Police

> may deny a license or deny the renewal of a license to any applicant who is not of good moral character, who is not a fit and proper person to hold a license issued under this chapter or who makes a material misrepresentation on the license application. The Chief of Police shall give the applicant written notification of the reasons for the denial of a license. ... The Chief of Police shall have the power to investigate and inquire into license applicants under this chapter and to require and enforce by subpoena the attendance of witnesses at such investigations.

(*Id.*, § 96-9).

Secondhand dealer licenses were issued on an annual basis and expired on December 31st of each year. In or about May 1998, the Rochester City Police Department's License and Warrants Unit, of which Sergeant Louis D'Angelo ("D'Angelo") was the commanding officer, learned that plaintiff had not renewed his secondhand dealer's license for the Ace of Diamonds, which had expired on December 31, 1997. An officer then telephoned the Ace of Diamonds and asked if the business continued to deal in secondhand goods, and, in response, was told by Simonetti that it did. Officer Paul D. Friday ("Friday") then conducted an inspection of the Ace of

3

Diamonds on May 14, 1998, found that the business was being run, and issued a Code Violations Bureau ticket to plaintiff for operating a secondhand business without a license.

A few days later, on May 14, 1998, plaintiff applied for a license. On May 27, 1998, the Police Department informed plaintiff that no action would be taken on his application, due to his outstanding Municipal Code Violations Bureau judgments.

D'Angelo and Friday then went to the Ace of Diamonds on May 29, 1998 as part of an investigation into a grand larceny of jewelry, because they had been advised by another police agency that a suspect had driven to the Ace of Diamonds after the larceny. The officers did not recover any stolen property at the Ace of Diamonds, but their inspection of the shop's books revealed that plaintiff had conducted 48 secondhand transactions in 1998, for which he had failed to submit "transaction cards" to the Chief of Police, as required by § 96-5(C) of the City Code. In that regard, Simonetti admitted to Friday that he had not submitted the transaction cards, because he and plaintiff "did not like that part of the code." Friday issued a Municipal Code Violations Bureau ticket to plaintiff for violating § 96-5(C).

On June 1, 1998, plaintiff then paid the Municipal Code Violations Bureau to settle all outstanding fines and penalties. Upon receiving plaintiff's payment, the police department then began its investigation in connection with plaintiff's application for a secondhand dealer's license. The department's investigation revealed, among other things[2], that plaintiff had repeatedly been cited for violating the City Code, for engaging

---

[2] The investigation also revealed that plaintiff had numerous criminal convictions, although those were not relied upon by the defendants as a basis for eventually denying plaintiff's application.

in secondhand sales without a license, for failing to record the personal information of persons from whom he purchased jewelry, and for failing to send transaction cards to the police department as required. D'Angelo wrote to plaintiff on June 29, 1998, and informed him that, based upon the investigation, he was recommending that the Chief of Police deny plaintiff's application. D'Angelo stated:

> Specifically, the investigation found evidence that you have repeatedly refused to operate the Ace of Diamonds in compliance with Chapter 96 of the Rochester City Code, entitled *Secondhand Dealer*; and that you have failed to comply with all laws, ordinances and rules regulations [sic] in violation of Rule #.5 [sic] of the Police Chief's Rules and Regulations pursuant to § 96-2(D) of the Rochester City Code; to wit:
>
>> A. You have repeatedly operated the Ace of Diamonds without a license in violation of § 96-1(A) of the Rochester City Code. In 1996 you operated for more than 10 months without a license. Again, in 1997 you operated for more than 7 months without a license and again in 1998 you have been operating since January 1, 1998 without a license. You were found guilty by the Municipal Code Violations Bureau of operating without a license on May 29, 1996, August 10, 1996, and May 14, 1998;
>>
>> B. You have repeatedly failed to report purchases to the Chief of Police in violation of § 96-5(C) of the Rochester City Code. An investigation of your records and the City's records on June 9, 1998 reveals that you have conducted 48 secondhand transactions since the beginning of the year and have failed to report any of them to the Chief of Police. Moreover, the Municipal Codes Violations Bureau found you guilty of violating § 96-5(C) of the Rochester Code on May 29, 1996 and August 10, 1996;
>>
>> C. On the evening of June 23, 1998, you were found operating a Second Hand Dealer Shop at a premises located at 484 Monroe Avenue; to wit: the front door of the premises was open, two other men were seated behind display cases, the premises contained two neon lit signs in the window. On sign stated "open" and the other sign stated "We buy gold". Moreover, approximately one month before, an employee of the Ace of Diamonds informed a police

>officer that you were opening a secondhand dealer business at 484 Monroe Avenue; and
>
>D. On the evening of June 23, 1998, you were found gambling, outside the premises referenced in C., in violation of Article 225.05 of the Penal Law.
>
>Thus, you have repeatedly violated Chapter 96 of the Rochester City Code and rule #.5 of the Police Chief's Rules and Regulations.
>
>As a result of your prior violations, the City issued you a conditional license in both 1996 and in 1997. Despite the City granting you additional opportunities to operate the Ace of Diamonds in compliance with Chapter 96 of the Rochester City Code and the Police Chief's Rules and Regulations, you continue to fail to do so.
>
>Accordingly, as a result of your continuing practice to disregard the laws, the License and Warrants Unit, pursuant to § 96-2(C) and § 96-9(A) of the Rochester City Code, has no other alternative than to recommend to the Chief of Police that your application for a Secondhand Dealer's license be denied. This preliminary decision will become a final recommendation if you do not respond to this letter within 10 days of receipt of this letter.
>
>You are hereby provided an opportunity to respond to the findings set forth above. Any relevant information you possess, including that which refutes the above referenced findings or is in support of your application , should be submitted in writing to the undersigned within 10 days of you receipt of this letter. All information timely submitted will be considered in reaching a final determination regarding your application for a license.
>
>You are entitled to review the records relating to this matter. Please contact the undersigned at [telephone number] if you wish to make an appointment to review the records or if you have any questions regarding the process.

D'Angelo Aff. Ex. A.

On July 8, 1998, plaintiff had his attorney, William C. Dedes, Esq. ("Dedes"), respond to D'Angelo's letter. Dedes sent a letter stating, with regard to D'Angelo's preliminary finding, "we dispute this finding and each and every allegation contained in your letter of June 29, 1998." However, Dedes gave no specifics and offered no proof

6

to refute D'Angelo's findings.  Dedes then stated that he had been informed that police officers were interfering with plaintiff's "retail business," for which he did not need a permit.  Dedes said that it was his understanding that officers had told plaintiff that he could not operate a retail jewelry business, and that the officers had told plaintiff's wholesale suppliers that he was "somehow engaged in illegal activities."  Dedes also asked D'Angelo to provide him with records pertaining to the findings in D'Angelo's letter.  However, there is no indication that Dedes or anyone else made any further submission to the police department in connection with plaintiff's license application.

Sammie Drayton, Sr., the Acting Chief of Police of the Rochester Police Department, then informed plaintiff that he was adopting D'Angelo's recommendation to deny plaintiff's application for a secondhand dealer's license, and that plaintiff was therefore required to "immediately cease any and all second hand dealing at Ace of Diamonds."  Drayton's letter further informed plaintiff that he could seek review of the decision in an Article 78 proceeding.  Subsequently, on or about December 3, 1998, plaintiff commenced an Article 78 Proceeding in New York State Supreme Court, Monroe County.  However, plaintiff later discontinued that action.

Plaintiff commenced this action in New York State Supreme Court, Monroe County, on June 28, 2001.  Defendants removed the action to the United States District Court for the Western District of New York on November 7, 2001.  Plaintiff's unsworn complaint alleges that, until 1996, he had no difficulty obtaining a secondhand dealer's license from the City of Rochester, but that, beginning in 1996, "[d]efendants began creating problems for [him] in retaliation for an incident which occurred in May 1996." (Complaint, ¶ 8).  More specifically, the complaint alleges that the police were upset at

7

him for allowing an employee to leave his car parked in a short-term parking space. (*Id.*, ¶¶ 9-12). Plaintiff contends that the police subsequently began harassing him for doing business without a license, and issued him tickets. Plaintiff admits that he in fact had no license, and that he pled guilty to the infractions, but he suggests that the police were intentionally delaying the processing of his license application. (*Id.*, ¶ 24). Plaintiff further contends in his complaint that as a result of the alleged harassment by defendants, he was forced to cease dealing in second hand jewelry, although he continued to buy and sell new jewelry. Plaintiff also alleges that defendants continued to harass him, by informing his landlord and his wholesale suppliers that he was engaged in illegal activities, and that, in October 1998, Officer Rutherford went to his store and told him that he could not have customers in his store, "even for appraisals, referrals, or sale of new jewelry." (*Id.*, ¶ 40). Allegedly, Rutherford told plaintiff, "I live to put you out of business." (*Id.*, ¶ 41).

Based on these allegations, the complaint purported to state three causes of action: 1) a claim that the "individual defendants violated plaintiff's rights as established by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States," by depriving plaintiff "of the ability to run a business and thus earn a living all without justification, probable cause, order of a court, and without being afforded an opportunity for a hearing"; 2) a claim of supervisory liability against the City of Rochester for the acts of the individual defendants; and 3) a claim against the City of Rochester alleging that Chapter 96 of the City Code violated plaintiff's constitutional rights in two respects, namely, that it gave the Rochester Police Department the power

"to deny a second hand dealer's license without giving the applicant the right of appeal and/or a hearing in case of denial," and it was "vague and overbroad."

Defendants then filed a motion to dismiss the complaint, which the Court granted in part. The Court dismissed the procedural due process claims, alleging denial of a fair hearing, involving the second-hand dealer's license, finding, as a matter of law, that there was no due process violation, since the City of Rochester provided adequate hearing procedures. The Court further found, however, that plaintiff's Section 1983 claim against both the individual defendants and the City of Rochester could go forward, to the extent that plaintiff alleged that defendants wrongfully denied him the right to earn a living[3] by selling *new jewelry*, an activity for which he apparently did not need a permit. Finally, the Court ruled that plaintiff's claims in this action only involved events which allegedly occurred between June 28, 1998 and October 31, 1998.[4]

The undersigned then referred this case to the Honorable Jonathan W. Feldman, United States Magistrate Judge, for all non-dispositive pretrial matters. Magistrate Judge Feldman issued a Scheduling Order [#17] which, among other things, established October 15, 2002 as the deadline for bringing motions to amend the pleadings. After a period of discovery, the Court granted an application to stay the action, as the plaintiff was in bankruptcy. After the stay was lifted, the Court granted

---

[3] *See, McGee v. Hester*, 724 F.2d 89, (8th Cir. 1983)(Where the plaintiff's "business became the target of unlawful and unjustifiable [police] surveillance which interfered with and obstructed his ability and right to earn a living," the court held that, "[a]t some point, the methods of surveillance become so intrusive as to violate the [plaintiff's] clearly established property right."), *reh'g denied* Feb. 1, 1984; *see also, Rodrigues v. Village of Larchmont*, 608 F.Supp. 467, 474 (S.D.N.Y. 1985)("Unlawful and unjustifiable surveillance that interferes with and obstructs a person's ability and right to earn a living may establish a claim under Section 1983.")(*citing McGee v. Hester*).

[4] This ruling was based upon plaintiff's counsel's sworn statement.

the parties leave to conduct certain remaining discovery, and set July 29, 2005 as the deadline for filing dispositive motions. Following the completion of discovery, defendants filed the subject motion for summary judgment [#25].

In their motion for summary judgment, defendants contend, first, that there are two claims remaining in this action: 1) a claim that defendants deprived plaintiff of the right to earn a living by selling new jewelry at the "Ace of Diamonds " store, between June 28, 1998 and October 31, 1998; and 2) a claim that Chapter 96 of the City Code is unconstitutionally vague and over-broad. Defendants next contend that the first of these claims must fail, because plaintiff never dealt in new jewelry at the Ace of Diamonds during the relevant period. Rather, defendants contend that plaintiff only dealt in new jewelry at a different store that he owned, named Hatice Jewelers, on Monroe Avenue in Rochester. Alternatively, defendants contend that any constitutional violation did not occur pursuant to a policy or custom of the City of Rochester, and that the individual defendants would be entitled to qualified immunity. Lastly, defendants contend that Chapter 96 of the City Code is not vague or overbroad.[5]

Plaintiff opposes the motion for several reasons. Plaintiff contends that defendants intentionally prevented him pursuing his business in the sale of new jewelry, for which he did not need a permit, by falsely telling plaintiff's wholesalers that he was "involved in illegal activities," which caused the wholesale suppliers to stop dealing with

---

[5] Defendants also argued that the application of the statute did not violate plaintiff's procedural due process rights to notice and a hearing. See, Def. Brief [#29] pp. 11-12. However, that argument was unnecessary, since, as discussed above, the Court dismissed plaintiff's claim in that regard in its prior Decision and Order.

him. Pl. Memo [#35] p. 5.[6]  In this regard, however, plaintiff contends that he should be allowed to prove that defendants prevented him from conducting business at Hatice Jewelers, despite the fact that the Ace of Diamonds was the only business mentioned in the complaint.  Plaintiff also contends that the actions of the individual defendants, in allegedly preventing plaintiff from operating his business, were pursuant to a municipal policy, since they were done pursuant to the direction of defendant Sergeant D'Angelo, who was "a representative of the Chief of Police." Pl. Memo of Law [#35] p. 5.

## ANALYSIS

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[6]Plaintiff's use of the term "wholesalers" includes one "junk man" who came into his shop and sold him a "big glob" of melted sterling silver.  When asked the man's name at his deposition, plaintiff responded, "I don't even remember.  It was some old guy." Yaman Dep. 44-45.

322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

In the Court's previous Decision and Order in this case, issued at the pleading stage and without the benefit of discovery, the Court held that plaintiff could, "insofar as he alleges that defendants . . . denied him the right to *sell new jewelry*, pursue a claim that defendant's actions denied him the right to earn a living." Decision and Order [#13] at 9 (emphasis added). In that regard, the Court relied upon a decision of the Eighth Circuit Court of Appeals, *McGee v. Hester*, 724 F.2d 89 (8th Cir. 1983), in which the

plaintiff, a liquor store owner, claimed that officers from the state alcoholic beverage commission unreasonably interfered with his property rights by "unreasonably surveilling" his establishment. The plaintiff in the *McGee v. Hester* case alleged that,

> [t]he methods and practices employed in conducting the surveillance consisted of: parking five to ten feet from McGee's front door for long periods of time; taking pictures of customers; conspicuously writing down customers' license plate numbers; following customers leaving the liquor store; parking extremely close to McGee's business when no parking stalls were available; and coming into the store and following customers out as they left.

*Id.* at 90. The plaintiff in *McGee v. Hester* further alleged that one of the officers told him that he would "put him out of business." *Id*. at 91. The Eighth Circuit held that the plaintiff could establish a constitutional violation if he proved that the officers, "intentionally and substantially," "engaged in conduct that discouraged customers from purchasing liquor at McGee's store and . . . intended such a result to flow from their actions." *Id*. at 92. The circuit court further held that the officers would not be entitled to qualified immunity, since "at some point, the methods of surveillance become so intrusive as to violate the clearly established property right of McGee of which a reasonable person would have known." *Id*. The Seventh Circuit has also recognized a similar claim relating to the right to earn a living. *See, Easter House v. Felder*, 910 F.2d 1387, 1407 (7th Cir. 1990) ("Clearly, an unwarranted investigation by licensing officials conducted in a manner calculated to discourage customers or interfere with a licensee's business may violate a property right.") (*citing McGee v. Hester, other citations omitted*), *cert den*. 498 U.S. 1067, 111 S.Ct. 783 (1991). In *Rodrigues v. Village of Larchmont, N.Y.*, 608 F.Supp. 467, 474 (S.D.N.Y. 1985), the Southern District of New York likewise held that, "[u]nlawful and unjustifiable surveillance that interferes with and obstructs a

13

person's ability and right to earn a living may establish a claim under Section 1983."

In the instant case, however, now having the benefit of discovery, the Court finds that defendants are entitled to summary judgment on plaintiff's right to earn a living claim. In this regard, the Court finds that plaintiff had no property right in earning a living as a secondhand dealer, since he did not have a license. As for the sale of retail jewelry, the Court noted above that plaintiff's own business associate denied that the Ace of Diamonds sold jewelry. However, even assuming, as plaintiff maintains, that plaintiff sold some jewelry from that location, his constitutional claim still must fail, since there is no indication that the police knew that he was doing any retail business at the Ace of Diamonds. Rather, the record indicates that the police were merely attempting to prevent plaintiff from unlawfully dealing in secondhand goods without a license, as he had repeatedly done in the past.

To the extent that plaintiff contends that he should be allowed to maintain a claim arising from his operation of Hatice Jewelers on Monroe Avenue, the Court disagrees. There is no suggestion in the complaint that plaintiff's lawsuit involved any business other than the Ace of Diamonds. Nor did plaintiff ever seek to amend the complaint to add a claim involving Hatice Jewelers. Accordingly, the Court declines to consider plaintiff's arguments concerning Hatice Jewelers.

In considering whether an enactment is unconstitutionally vague, it is well settled that,

> [t]he Due Process Clause requires that laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them. We have clearly held, however, that a statute or regulation is not required to specify every prohibited act. Limitations inherent in the

14

> English language often prevent the drafting of statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. Furthermore, the Supreme Court has expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

*Perez v. Hoblock*, 368 F.3d 166, 174 -175 (2d Cir. 2004) (citations and internal quotation marks omitted). Moreover,

> when the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only ... in light of the specific facts of the case at hand and not with regard to the statute's facial validity. One whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness.

*U.S. v. Venturella*, 391 F.3d 120, 134 (2d Cir. 2004) (*citing U.S. v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003)). In other words, in a case such as this one, where no First Amendment right is implicated, a court must consider only whether the statute is unconstitutionally vague "as applied."

    Here, the Court finds that the statute was not unconstitutionally vague as applied. It was clearly not unreasonable for defendants to deny plaintiff a secondhand dealer's license, since he had, over a period of years, repeatedly violated the requirements of the statute, by failing to forward transaction cards to the police chief as required, and by continuing to operate during periods when his license was expired. *See, Merco Properties, Inc. v. Guggenheimer*, 395 F.Supp. 1322, 1330 (S.D.N.Y. 1975) (Finding, in situation where license applicant had been "evasive" and not forthright, that "the Commissioner certainly could have concluded that [the applicant] was not likely to adhere to standards of integrity, honesty, and fair dealing, and was thus not a 'fit and

15

proper person' to receive a license."); *Perez v. Hoblock*, 368 F.3d at 177 (In a case where a horse racing official had been fined under rule prohibiting conduct "detrimental to the best interests of racing generally," the court had "little difficulty finding" that the official's conduct, consisting of repeated threats and obscenities, met that standard.).

Nor is there any merit to plaintiff's contention that the statute is overbroad, since the overbreadth doctrine pertains to First Amendment claims, which are not present here. *See, e.g., U.S. v. Sattar*, 314 F.Supp.2d 279, 304 (S.D.N.Y. 2004) ("Under the First Amendment doctrine of overbreadth, a statute is invalid when it brings within its scope--and thus threatens to chill--conduct protected by the First Amendment.") (*citing Virginia v. Hicks*, 539 U.S. 113, 123 S.Ct. 2191, 2196, (2003); *U.S. v. Hildenbrandt*, 378 F.Supp.2d 44, 46 (N.D.N.Y. 2005) ("[T]he overbreadth doctrine is in fact limited to First Amendment challenges. The Supreme Court and the Second Circuit make that clear.") (*citing United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095 (1987) and *United States v. Rybicki*, 354 F.3d at 130-31.

## CONCLUSION

For all of the foregoing reasons, defendants' summary judgment motion [#25] is granted, and this action is dismissed, with prejudice.

So ordered.

Dated: Rochester, New York
     November 28, 2005

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge